OPINION
{¶ 1} Iler Crawford, the father of Shawn Thompkins, appeals from a judgment of the trial court adjudicating his minor son to be a dependent child, and awarding permanent custody to the Montgomery County Children Services Board (CSB). Thompkins contends that the trial court was without personal jurisdiction over him, because personal service on him was never perfected properly under the Ohio Rules of Civil Procedure. Specifically, he contends that when service by certified mail at a Dayton address failed with a return indicating that he did not reside at that address, the CSB then attempted to serve Crawford by certified mail at an alternate Columbus address that it had for him, and this service failed with a return indicating: "Attempted Not Known," the CSB was then required, under Civ.R. 4.6(D), to cause service of process to be sent to Crawford by ordinary mail at the Columbus address before resorting to service by publication. The intermediate attempt to serve Crawford at the Columbus address by ordinary mail was not done.
 {¶ 2} We agree with Crawford that the failure to have attempted service upon him by ordinary mail at the Columbus address is a fatal defect in service of process, which deprived the trial court of personal jurisdiction over him. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} In 2002, CSB filed a complaint alleging that Thompkins was a dependent child, and seeking permanent custody. At the time CSB filed the complaint, it did not know the identity of the child's father, but it subsequently determined that Iler Crawford was the father. CSB's investigations yielded two potential addresses for Crawford, one in Dayton, and one in Columbus. Attempts to reach Crawford at either of these addresses were unsuccessful.
 {¶ 4} Service of process was made upon Crawford at the Dayton address by the process server leaving it at that address with June Casten, Crawford's mother, who evidently accepted service on behalf of her son. As a result of continuances, however, this attempt by CSB to obtain permanent custody of Thompkins through an adjudication of dependency was not completed in time, and the trial court's authority to act on CSB's complaint expired in early 2003.
 {¶ 5} In February, 2003, CSB filed a new complaint for permanent custody of Thompkins, again alleging dependency. Service on Crawford was attempted at the Dayton address. This attempt to serve Crawford failed, with the process server reporting that Crawford did not reside at that address. CSB filed an affidavit for publication, and Crawford was then served by publication. Thereafter, but before the hearing, CSB caused an attempt to serve Crawford by certified mail at the Columbus address it had for him. This certified mail was returned to sender with the notation "Attempted Not Known" checked.
 {¶ 6} At the hearing on the complaint, which was before a magistrate, the attorney who had been assigned to represent Crawford asserted a lack of personal jurisdiction, based upon the failure to have served his client with the summons and complaint properly under the rules. The magistrate ruled that Crawford had been properly served, by publication, and the hearing proceeded. The magistrate found that Thompkins was a dependent child, and awarded custody to CSB.
 {¶ 7} Crawford objected to the magistrate's decision, asserting the lack of personal jurisdiction based upon the failure of proper service. The trial court overruled his objection, and adopted the magistrate's decision as the judgment of the trial court. From that judgment, Crawford appeals.
 {¶ 8} Initially, Crawford's assigned appellate counsel filed a brief pursuant to Anders v. California (1967), 386 U.S. 738. Counsel advised this court that neither he nor Crawford's trial attorney had been able to contact Crawford. In the Anders
brief, counsel noted the potential issue involving a defect in service and concomitant lack of personal jurisdiction, but concluded that this issue was without merit.
 {¶ 9} We concluded that the service-of-process issue had sufficient merit to prevent this appeal from being wholly frivolous, and assigned new appellate counsel to file a brief raising this as an assignment of error. Crawford's new appellate counsel has complied with our directive, and this appeal is now before us on the merits.
 II {¶ 10} Crawford's sole assignment of error is as follows:
 {¶ 11} "THE JUVENILE COURT ERRED BY ENTERING A JUDGMENT GRANTING PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN'S SERVICES WHEN SERVICE OF PROCESS WAS NOT PERFECTED ON THE FATHER OF THE MINOR CHILD IN ACCORDANCE WITH JUVENILE RULES OF PROCEDURE 16."
 {¶ 12} Juv. R. 16 provides that service of summons shall be made in accordance with Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6, "[e]xcept as otherwise provided in these rules." Juv. R. 16 then goes on to provide both the method of service by publication, and that before service of publication can be made, an affidavit must be filed averring "the service of summons cannot be made because the residence of the person is unknown to the affiant and cannot be ascertained with reasonable diligence * * *."
 {¶ 13} In the case before us, CSB admits that it had two possible residential addresses for Crawford in its file, one in Dayton, and one in Columbus. It had perfected service on Crawford at the Dayton address in an earlier case, but only by virtue of Crawford's mother having accepted service for him at that address. In this case, the process server indicated that Crawford did not reside at the Dayton address. CSB then filed an affidavit for service by publication, and service by publication was effected.
 {¶ 14} At the hearing, Crawford's attorney represented to the magistrate that he had established both the Dayton address and the Columbus address as possible residence addresses for Crawford after a five-minute search on the internet. This representation was not rebutted. Crawford's attorney noted that Crawford's first name, Iler, is unusual, lending further credence to the possibility that one of these two addresses might be his residence.
 {¶ 15} After service by publication, but before the hearing, CSB attempted certified mail service upon Crawford at the Columbus address. This was returned to sender. On the returned envelope, in the "Return to Sender" area, there are five printed statements, each with a preceding box. These statements are: "Insufficient Address"; "Attempted Not Known"; "No Such Number/Street"; "Not Deliverable as Addressed Unable to Forward"; and "Other." Only the "Attempted Not Known" box is checked.
 {¶ 16} Had the attempt to serve Crawford in Columbus succeeded, we would conclude that any error in having prematurely effected his service by publication would be harmless. Similarly, had the attempt to serve Crawford in Columbus reached the point of futility at which service by publication is permitted, we would conclude that any error in having prematurely effected his service by publication would be harmless. But neither of these results occurred, in our view.
 {¶ 17} Obviously, the attempt to serve Crawford in Columbus by certified mail was not successful. Civ. R. 4.6(D) provides that when a certified mail envelope is returned with an endorsement showing that the envelope was unclaimed, an attempt by ordinary mail must be made. If the ordinary mail is not returned, the service is deemed complete; if it is returned, it is deemed unsuccessful, and could then be a predicate for service by publication.
 {¶ 18} When an attempt is made to deliver certified mail, and there is no one present to accept it, the mail carrier leaves a notice of the attempt. This notice gives the intended recipient the option of calling and scheduling a date to accept delivery, or of going to the post office and picking up the certified mail. When neither of these events occur, the certified mail is deemed unclaimed. Of all the notations on the "Return to Sender" portion of the envelope that was sent by certified mail to Crawford at the Columbus address, with the exception of the catch-all "Other," the only one that would apply to the situation where the mailing was unclaimed is the "Attempted Not Known" notation, which is the one that was checked. The others all pertain to defects in the address. We conclude, therefore, that the return-to-sender notation on the envelope used to attempt certified mail service on Crawford at his Columbus address should be seen as an indication that it was unclaimed, triggering the application of Civ. R. 4(D). Thus, assuming that CSB had the obligation to attempt service on Crawford at the Columbus address, we conclude that it was obliged, after the failure of service by certified mail, to attempt service by ordinary mail. It did not do so.
 {¶ 19} CSB argues that it had no obligation, as part of its obligation of reasonable diligence under Juv. R. 16, to seek to serve Crawford at the Columbus address. We disagree. By CSB's own admission, this was a possible residential address of Crawford that it had in its file less than six months before the hearing in this case. Although attempts to contact Crawford at that address were unsuccessful, so were attempts to contact him at the Dayton address. CSB points out that it had obtained service on Crawford in the prior case at the Dayton address, but this was only by virtue of Crawford's mother's having accepted service on his behalf on that occasion, and an attempt to serve Crawford at the Dayton address in this case resulted in the process server's having determined that Crawford did not reside there.
 {¶ 20} We conclude that in a case involving the termination of parental rights, under all of the circumstances noted, reasonable diligence required an attempt to serve Crawford, in accordance with Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6, at the Columbus address, and this required an attempt to serve Crawford by ordinary mail at that address once the certified mail attempt was returned "Attempted Not Known." Had these requirements been satisfied before the hearing, we would be inclined to deem harmless any error in having prematurely effected Crawford's service by publication, but the ordinary mail service requirement was not satisfied.
 {¶ 21} CSB cites In re Shackelford (May 22, 1990), Montgomery App. No. 11783, and In re Griffin (January 19, 2001), Montgomery App. No. 18432, in each of which, claims that a father had not been properly served were unavailing on appeal. In both of those cases, however, it was the mother of the child who was asserting a defect in service of process on the father as a basis for reversal. Neither mother was able to persuade us that any failure to have properly served the father had prejudiced her rights. In this case, by contrast, the father, himself, asserted at trial, and is asserting on appeal, a lack of personal jurisdiction based on a failure of service upon him. It may be, as we understand CSB to be asserting, that Crawford has had no involvement in his son's life, so that his participation in an adjudication hearing, should it result from a proper service attempt, will have no likelihood of changing the outcome. Nevertheless, parental rights are fundamental, and may not be terminated without due process.
 {¶ 22} Crawford's sole assignment of error is sustained.
 III {¶ 23} Crawford's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
Brogan, P.J., and Donovan, J., concur.